IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARSHA CHAMBERS and JERRY CHAMBERS, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:15-cv-1879-M-BN |
| GREEN TREE SERVICING LLC, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

Defendant Ditech Financial, LLC f/k/a Green Tree Servicing, LLC has filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Dkt. No. 78 (the "MTD"). Plaintiffs Marsha Chambers and Jerry Chambers, representing themselves *pro se*, have filed a response, *see* Dkt. No. 84, and Defendant filed a reply*, see* Dkt. No. 88.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation.

**Background**

On September 2, 2008, Patricia Verm executed a Texas Home Equity Real Estate Note (the "Note") to Green Tree Financial Servicing Corporation. *See* Dkt. No.

79-1 at 2-3. The Note was secured by a Texas Home Equity Deed of Trust (the "Deed of Trust") pledging Verm's interest in property located in Kaufman, Texas (the "Property"). *See id.* at 4-10.

Defendant and its predecessors have been known by several names. On October 1, 1999, Green Tree Financial Servicing Corporation changed its name to Conseco Finance Servicing Corp. *See* Dkt. No. 79-2 at 2-3. On June 9, 2003, Green Tree Servicing LLC was formed, and Conseco Finance Servicing Corp. changed its name to Green Tree Servicing LLC. *See* Dkt. No. 79-2 at 4-7. On August 14, 2015, Green Tree Servicing LLC merged with various Ditech entities and changed their name to Ditech Financial LLC. *See* Dkt. No. 79-2 at 8-10.

In their Second Amended Petition [Dkt. No. 58], Plaintiffs allege that Marsha Chambers and Conseco entered a written loan assumption agreement in mid-September 2002 under which Conseco agreed to allow Marsha Chambers to assume Patricia Verm's mortgage loan. Marsha Chambers asserts that a Conseco representative prepared the written loan assumption agreement and instructed her to sign it.

Plaintiffs further allege that, at that same meeting, but after the written loan assumption agreement was signed, Marsha Chambers and Conseco entered a separate, oral agreement. The oral agreement required Marsha Chambers to pay a set amount of money to purchase the right to assume the mortgage loan and for Conseco's services to prepare the necessary loan assumption paperwork at its office. The oral agreement

also required Marsha Chambers to make six months' worth of payments on Patricia Verm's mortgage loan before Conseco would allow Marsha Chambers to assume the loan. And the oral agreement required Marsha Chambers to prepare, and Marsha Chambers and Patricia Verm to sign, additional contractual documents to prove that Marsha Chambers was purchasing the Property from Patricia Verm and that Patricia Verm wanted Marsha Chambers to assume the mortgage loan.

On September 30, 2002, Marsha Chambers executed a Real Estate Promissory Note, which identified Patricia Verm as the lender but directed Marsha Chambers to tender payments to a payment address for Conseco Financial Services Corp, and Patricia Verm executed a General Warranty Deed granting, selling, and conveying her interest in the Property to Marsha Chambers. *See id.* at 2-4. These documents were provided to Green Tree in October 2002. Plaintiffs allege that Marsha Chambers would not have prepared the Promissory Note and/or General Warranty Deed or executed the Promissory Note but for the instructions from the Conseco representative and the terms of the oral agreement. Marsha Chambers also alleges that she made all of the payments required by the oral agreement.

Plaintiffs allege that Conseco and Green Tree continually treated Marsha Chambers as if she had been allowed to assume Patricia Verm's mortgage loan in 2002. For example, Green Tree accepted Marsha Chambers' insurance policy on the Property even though the policy did not include or mention Patricia Verm. Green Tree also issued checks for roof replacement directly to Plaintiffs, and Green Tree informed Marsha Chambers that she must reimburse Green Tree for any tax or insurance

expenses that it incurred concerning the Property. Conseco continued to request mortgage loan payments from Marsha Chambers between March 2003 and December 2004. In 2006, when Kaufman County sued Marsha Chambers for past due property taxes on the Property, Green Tree paid the taxes. Green Tree also provided Marsha Chambers with a payment history on the mortgage loan from 1998 through 2005. Marsha Chambers also alleges that, between 2002 and 2013, some of the Conseco and Green Tree agents told her that she was legally responsible for the mortgage payments, and others told her that she was not legally responsible for the mortgage payments.

Plaintiffs allege that, on January 29, 2005, a Green Tree agent told Marsha Chambers that she had no legal right to the Property and threatened to seek criminal charges to have her removed from the Property. On July 23, 2005, a Green Tree agent told Marsha Chambers that she was being served with a foreclosure notice on the Property because Green Tree planned to add her name to the pending foreclosure action against Patricia Verm. Plaintiffs further allege that, based on those representations, Marsha Chambers was planning to vacate the property in 2005 because "I believed that Greentree had possibly given me two different justifiable reasons to believe that my name was never added to the mortgage loan." But, sometime in 2005, a Conseco representative told her that the mortgage loan was being reinstated in her name. Plaintiffs further alleged that, sometime between 2007 and 2009, a Green Tree agent told Marsha Chambers that her name was never added to the mortgage loan and threatened to sue her for fraud because any property that is

subject to a mortgage cannot be sold. *See* Dkt. No. 58 at 59-65.

Plaintiffs further allege that, in 2013, for the first time, Green Tree provided Plaintiffs with written notice that Marsha Chambers had never been allowed to assume Patricia Verm's mortgage loan. *See* Dkt. No. 58 at 5. When Marsha Chambers inquired about an early payoff of the Note, a Green Tree agent informed her on March 8, 2013 that "no short payoff offer by any person that is not on the mortgage loan can even be considered by the mortgage company." *Id.* at 57. And Plaintiffs allege that, in May of 2013, Green Tree provided Marsha Chambers with written notice that the loan assumption agreement signed by Marsha Chambers in 2002 had been lost or intentionally destroyed or that Conseco had actually made the decision in mid-September 2002 to not allow Marsha Chambers to assume Patricia Verm's mortgage loan. *See id.*

Plaintiffs filed their Second Amended Complaint on June 17, 2016. Plaintiffs assert claims for violations of the Texas Deceptive Trade Practices Act, Texas Business and Commerce Code, Texas Finance Code, intentional infliction of emotional distress, unjust enrichment, and common law fraud. *See* Dkt. No. 58.

Defendant filed a motion to dismiss or, in the alternative, for a more definite statement on July 1, 2015. *See* Dkt. No. 78. Defendant contends that "Plaintiffs do not, cannot, and will never be able to allege sufficient fact to state any cognizable claim for relief against Ditech." According to Defendant, "Plaintiffs' entire lawsuit is based on an alleged loan assumption agreement that Marsha Chambers entered into with

[Conseco] in 2002." *Id.* at 5. Discovery has been completed, and "[n]o party has been able to locate documentation establishing Marsha Chambers' allegation that she 'assumed' Patricia Verm's loan obligations" from Conseco. *Id.* at 5-6.

Plaintiffs filed a response, *see* Dkt. No. 84, and Defendant filed a reply, *see* Dkt. No. 88.

The undersigned now concludes that the MTD should be granted in part and denied in part.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'"

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice").

## Analysis

I.   <u>All claims asserted by Jerry Chambers should be dismissed.</u>

In their Second Amended Complaint, Plaintiffs do not allege any relevant facts concerning Jerry Chambers. Instead, Plaintiffs plead that all of their claims arise from an oral agreement between Marsha Chambers and Defendant's predecessor, Conseco. And, as pleaded, any relief sought by Jerry Chambers would be incidental to that sought by Marsha Chambers. Accordingly, to the extent that Plaintiffs' claims seek to assert a claim on behalf of Jerry Chambers, Plaintiffs appear to have alleged their best case, no further opportunity to amend his claims is warranted, and all claims asserted by Jerry Chambers should be dismissed with prejudice.

II.   <u>Plaintiffs' Texas Deceptive Trade Practices Act claim should be dismissed.</u>

Defendant argues that Plaintiffs fail to state a claim under the Texas Deceptive Trade Practices Act (the "TDTPA") because they are not "consumers" as defined by the TDTPA. The elements of a cause of action under the TDTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas*, *Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease," and "the goods and services purchased or leased must form the basis of the complaint." TEX. BUS. & COM. CODE § 17.45(4)*; Cameron v. Terrell & Garrett*, *Inc.* 618 S.W.2d 535, 539 (Tex. 1981).

Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the TDTPA. *See Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980)). Moreover, "[a]lthough one who borrows money to buy a house can be a consumer under the [TDTPA] because that person's objective is to buy a home, subsequent actions related to mortgage accounts – for example, extensions of further credit or modifications of the original loan – do not satisfy the 'goods and services' element of the [TDTPA]." *Swim v. Bank of Am., N.A.*, No. 3:11-cv-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012).

In their response, Plaintiffs argue that their TDTPA claim is based on the acquisition of services related to the oral agreement and not the written loan assumption agreement. "'[T]he key principal in determining consumer status is that the goods or services purchased must be an *objective* of the transaction, not merely incidental to it.'" *Maginn v. Northwest Mortg., Inc.*, 919 S.W.2d 164, 166 (Tex. App. – Austin 1999, no pet.) (quoting *First State Bank v. Keilman*, 815 S.W.2d 914, 929 (Tex. App. – Austin 1991, writ denied) (emphasis in *Keilman*)). Here, the services related to the oral agreement were merely incidental to the objective of the transaction, which was to modify the original loan to allow Marsha Chambers to assume Patricia Chambers' obligations under the Note. And Marsha Chambers did not purchase the Property from Defendant, but from Patricia Verm.

Accordingly, the undersigned concludes that Plaintiffs are not consumers under

the TDTPA and cannot plead any set of facts to show that they are consumers.

Defendant also argues that Plaintiffs' TDTPA claim is barred by the two-year statute of limitations. *See* TEX. BUS. & COM. CODE § 17.565. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Defendant argues that the statute of limitations ran in September 2004 because Marsha Chambers attempted to assume the Note in September 2002. Marsha Chambers responds that the statute of limitations should be tolled because she did not discover – nor in the exercise of reasonable diligence should have discovered – the false, misleading, or deceptive act or practice because Defendant fraudulently concealed the fact that she had not been allowed to assume Patricia Verm's mortgage loan.

The Court need not resolve this issue because, regardless of when the statute of limitations ran, Plaintiffs cannot plead any set of facts to show that they are consumers.

For these reasons, the undersigned concludes that Plaintiffs' TDTPA claim should be dismissed with prejudice.

III.   <u>Plaintiffs' statutory fraud claim should not be dismissed.</u>

In the alternative to their TDTPA claim, Plaintiffs assert a claim for fraud in a real estate transaction. *See* TEX. BUS. & COM. CODE § 27.01. Texas Business and Commerce Code § 27.01 provides a statutory cause of action for fraud in real estate and stock transactions. *See id.* Section 27.01 only applies to misrepresentations of material

fact made to induce another to enter into a contract for the sale of land or stock. A loan transaction, even if secured by land, is not considered to fall under the statute. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008); *Greenway Bank & Trust v. Smith,* 679 S.W.2d 592, 596 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.).

To prevail on a claim under Section 27.01, Plaintiffs must show "(a) false representation of a past or existing material fact, when the false representation [is] (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract; or (2) false promise to do an act, when the false promise [is] (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract." TEX. BUS. & COM. CODE § 27.01(a).

Plaintiffs allege that Conseco made a false promise or representation – that Marsha Chambers would be allowed to assume Patricia Verm's obligations under the Note – to induce Marsha Chambers to purchase the Property from Patricia Verm. Plaintiffs further allege that Marsha Chambers relied on those false promises and representations when she executed the written loan assumption agreement and the Promissory Note to purchase the Property. *See* Dkt. No. 58 at 35-39.

Defendant argues that Section 27.01 is inapplicable because there was neither a contract nor a sale of land between the parties involved in this case. *See Nolan v.*

-12-

*Bettis*, 577 S.W.2d 551, 556 (Tex. Civ. App. – Austin 1979, writ ref'd n.r.e.). But here Plaintiffs allege that there was a contract between Marsha Chambers and Conseco – the written loan assumption agreement – and that Conseco fraudulently induced her to execute the contract to purchase the Property, which required her to make the payments to Conseco. Because the statute does not expressly require that the contract or sale of land be between the parties to the litigation, the undersigned concludes that Plaintiffs have stated a statutory fraud claim.

Defendant also argues that Plaintiffs' claim under Section 27.01 is barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.051.

Defendant argues that, because the alleged misrepresentations were made in September 2002, the statute of limitations ran in September 2006. Plaintiffs respond that the statute of limitations was tolled because Defendant's predecessors concealed the fact that Marsha Chambers had not been allowed to assume the Note and because Plaintiffs could not have discovered that until they received written notice in May 2013. Plaintiffs plead that Conseco and Green Tree took inconsistent positions by telling Marsha Chambers that she had no legal right to the Property and that she was legally obligated under the Note. Plaintiffs also plead that, in 2005, Marsha Chambers had reason to believe that she had assumed the Note when she was told by a Conseco representative that the Note was being reissued in her name. And Plaintiffs plead that Defendant's predecessors sought payment of the Note from Marsha Chambers from 2002 until 2013.

Accordingly, the undersigned concludes that Plaintiffs sufficiently pleaded a

basis for asserting that the statute of limitations was tolled such that the statutory fraud claim should not be dismissed on a Rule 12(b)(6) motion on limitations.

For all of these reasons, Plaintiffs' claim for violation of Texas Business and Commerce Code § 27.01 should not be dismissed.

IV.    Plaintiffs' Texas Debt Collection Practices Act should be dismissed.

Plaintiffs allege that Defendant violated the Texas Debt Collection Practices Act (the "TDCPA") by threatening to take action not authorized by law, in violation of Texas Finance Code § 392.301(a)(8). *See* Dkt. No. 58 at 59-65. Section 392.301(a)(8) prohibits a debt collector from using "threats, coercion, or attempts to coerce" that involve "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Under Section 392.301(b), a debt collector is not prevented from "threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *Id.* § 392.301(b)(3).

Plaintiffs allege that, on January 29, 2005, a Green Tree representative told Marsha Chambers that she had no legal right to be in the house and insinuated that Green Tree would pursue criminal charges against her. Plaintiffs further allege that, in 2007 and 2009, a Green Tree representative told Marsha Chambers that her name had not been added to the mortgage loan and threatened to sue her for fraud because property subject to a mortgage cannot be sold. Plaintiffs allege that a Green Tree representative threatened their son, who was 10 or 11 at the time, by telling him that Green Tree would have the family forcibly removed from the house if the mortgage payment was not made that day. Plaintiffs also allege that, in 2005, a Green Tree

representative told Marsha Chambers that she would be a party to any foreclosure action concerning Patricia Verm's original loan.

Taking Plaintiffs' allegations as true, Plaintiffs have stated facts to support a claim under Section 392.301(a)(8).

Defendant also argues that Plaintiffs' claim for violations of Section 392.301(a)(8) is barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.051. Plaintiffs contend that the discovery rule tolls the statute of limitations because Defendant or its predecessors fraudulently concealed and failed to disclose that Marsha Chambers had not been allowed to assume Patricia Verm's mortgage loan in 2002. Plaintiffs state facts showing that Marsha Chambers knew or should have known in 2005, 2007, and 2009 that Green Tree disputed her claims that she had assumed the Patricia Verm's mortgage loan, and the alleged threats, coercion, attempts to coerce, or threats to take an action prohibited by law occurred in 2009 at the latest. Thus, the statute of limitations would have run in 2013. This, then, is a case in which the statute of limitations supports dismissal under Rule 12(b)(6) where it is evident from Plaintiffs' pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like. *See Jones*, 339 F.3d at 366.

Accordingly, the undersigned recommends that Plaintiff's claims for violations of Texas Finance Code § 392.301(a)(8) should be dismissed with prejudice.

V.     <u>Plaintiffs' Tex. Bus. & Com. Code § 305.053 claim should not be dismissed.</u>

The Telephone Consumer Protection Act (the "TCPA") makes it unlawful for any person in the United States "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Texas Business and Commerce Code § 305.053 provides a cause of action for violations of the TCPA, 47 U.S.C. § 227. *See* TEX. BUS. & COM. CODE § 305.053.

Plaintiffs allege that Defendant's predecessors violated Section 305.053 by placing approximately 1,421 auto-dialed telephone calls to Plaintiffs' residential phone number without her consent in an attempt to collect a debt. *See* Dkt. No. 58 at 66-72. Marsha Chambers alleges that "I specifically stated to the Greentree agents that unless my name was on the mortgage loan that Greentree had to stop calling my home phone number back in January of 2005. " Marsha Chambers further alleges that "I did not give permission for Greentree to call my home phone number unless Greentree was actually claiming that I legally was the person responsible for the mortgage loan and I specifically stated to the Greentree agents that unless my name was on the mortgage loan that Greentree had to stop calling my home phone number back in January of 2005 when the first Greentree agent told me that I had no legal right to be in the house on Betty Lane." Dkt. No. 58 at 68-69.

Defendant argues that Plaintiff appears to allege that she orally revoked her consent and urges the Court to follow a line of cases holding that withdrawal of consent under the TCPA must be in writing and that, as a result, Plaintiffs' oral revocation was not legally sufficient. *See Starkey v. Firstsource Advantage*, No. 07-cv-662A(Sr), 2010 U.S. Dist. LEXIS 60955, at *16 (W.D.N.Y. Mar 11, 2010). Plaintiffs argue that the

Court should follow the decision in *Adamcik v. Credit Control Services, Inc.*, 832 F. Supp. 2d 744, 750 (W.D. Tex. 2011), which expressly rejected *Starkey* and the cases following it, *see* 832 F. Supp. 2d at 750 (listing cases following *Starkey* decision, including *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-cv-1497-G (BF), 2010 WL 3791104, at *5 (N.D. Tex. Aug. 30, 2010), *rec. adopted*, 2010 WL 3791049 (N.D. Tex. Sept. 27, 2010)), and held that oral revocation is legally effective under the TCPA, *see id.* at 753.

In both *Starkey* and *Adamcik*, plaintiffs asserted claims for violations of both the TCPA and the Fair Debt Collection Practices Act ("FDCPA") over automated calls made to cellular telephone numbers to collect a debt. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The tension in these revocation-of-consent cases is that the FDCPA expressly provides for written revocation of consent, *see* 15 U.S.C. § 1692(c), but the TCPA is silent as to revocation. *Starkey* and its progeny interpret the TCPA's silence in a manner consistent with the protections of the FDCPA, which governs debt collection efforts, and require written revocation of consent under the TCPA. *See Adamcik*, 832 F. Supp. 2d at 750-51 (discussing *Starkey*); *see also Buchholz v. Valarity, LLC*, No. 4:13CV362 TIA, 2014 WL 5849434, at * 6 (E.D. Mo. Nov. 12, 2014) (collecting cases).

But the majority of cases to address the issue hold that prior express consent under the TCPA may be revoked, *see Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013), and that the revocation of consent may be oral, *see, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1254-55 (3d Cir. 2014); *Buchholz*, 2014 WL

5849434, at *7 (collecting cases); *Adamcik*, 832 F. Supp. 2d at 751. These decisions hold that oral revocation of consent under the TCPA is consistent with the legislative history and broad remedial purposes of the statute, the common law principles relating to consent and revocation, and the Federal Communication Commission's analysis of the revocation issue.

The undersigned recommends that the Court follow the majority line of cases and concludes that oral revocation of consent is effective under the TCPA and that continued automatic messages after consent is orally revoked violates the TCPA.

Accordingly, Marsha Chambers has stated a claim for violation of Texas Business and Commerce Code § 305.053 because she alleges that she orally revoked consent to receive automated telephone calls on her residential phone number and Defendant's predecessors continued to place such calls after consent was revoked.

Defendant also argues that Plaintiffs' claim for violation of Section 305.053 is barred by the four year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE § 16.051, and Plaintiffs seek recovery for telephone calls placed as far back as 2005, when consent was revoked. Plaintiffs argue that the statute of limitations was tolled by the discovery rule because Defendant's predecessors continued to place automated calls to their residential phone number, soliciting Marsha Chambers to make payments to Green Tree under the guise that Marsha Chambers had assumed the Note and fraudulently concealing the fact that she had not.

Under the facts as alleged by Plaintiffs, the undersigned concludes that Plaintiffs sufficiently pleaded a basis for asserting that statute of limitations was tolled

until 2013 when Marsha Chambers received written notification that she had not been allowed to assume the Note.

Accordingly, for all of these reasons, Plaintiffs' claim for violation of Texas Business and Commerce Code § 305.053 should not be dismissed.

VI.    <u>Plaintiffs' intentional infliction of emotional distress claim should be dismissed.</u>

Plaintiffs' intentional infliction of emotional distress claim is based on Plaintiffs' allegations that Green Tree "fraudulently concealed the material fact" that Green Tree did not allow Marsha Chambers to assume Patricia Verm's mortgage loan in 2002 and that Marsha Chambers was never legally obligated to make payments on the loan. Plaintiffs allege that they were forced to continue to live on the Property, even after the septic system was condemned in 2006 and there were no usable indoor toilets, because Marsha Chambers believed she was obligated to pay the mortgage loan after she signed the loan assumption agreement in 2002. Also, a Green Tree agent who knew that the septic system had been condemned told Marsha Chambers in 2006 that she was obligated to make the mortgage payments even if she moved. And Defendant's continued collection efforts from 2006 through 2013 reinforced Plaintiffs' belief that they were being forced to live on the Property without a functioning toilet because Marsha Chambers was obligated to make the mortgage payments and they could not afford to move. *See* Dkt. No. 58 at 73-89.

Intentional infliction of emotional distress is "a 'gap filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that

the victim has no other recognized theory of redress." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). To establish this claim under Texas law, a plaintiff must show (1) intentional or reckless conduct by the defendant (2) that was extreme and outrageous and (3) caused the plaintiff severe emotion distress. *See id.* at 445. Conduct qualifies as extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). To establish that the defendant acted intentionally or recklessly, the plaintiff must prove that "severe emotional distress" was "the intended consequence or primary risk" of the defendant's actions. *Vaughn v. Drennon*, 372 S.W.3d 726, 732 (Tex. App. – Tyler 2012, no pet.). To establish "severe emotional distress," the plaintiff must prove "distress that is so severe that no reasonable person could be expected to endure it. *GTE Sw. Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999)).

As a general matter, insensitive and rude behavior does not constitute extreme and outrageous conduct. *See Bruce*, 998 S.W.2d at 612. "Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct." *Id.* In fact, behavior is not outrageous simply because it is tortious. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Additionally, the fact that an action is intentional or malicious does not make is sufficiently extreme or outrageous to sustain a claim for intentional infliction of

emotional distress. *See Payne*, 2014 WL 5581314, at *5.

The availability of this tort has been greatly limited by the Texas Supreme Court, which has held that the tort is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct. *See Dillard Dept. Stores, Inv. v. Silva,* 106 S.W.3d 789, 797 (Tex. App. – Texarkana 2003), *aff'd*, 148 S.W.3d 370 (Tex. 2004) (per curiam) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex. 1998)). Whether conduct qualifies as extreme and outrageous is a question of law. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993); *McMillan v. Memorial Hermann Health Systems*, No. H-14-1215, 2014 WL 7192263, at *13 (S. D. Tex. Dec. 16, 2014).

Here, Plaintiffs do not plead facts to show that emotional distress was the intended consequence or primary risk of Defendant's alleged behavior. Taking Plaintiffs' allegations as true, they have not pleaded any facts to show that Defendant had control over the condition of the Property or the condemnation of the septic system.

But, even if Plaintiffs had sufficiently pleaded an intentional infliction of emotional distress claim, Defendant argues that it is barred by the two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003; *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex. App. – Houston [1st Dist.] 1995, writ denied). Generally, a cause of action accrues when a wrongful act causes an injury. *See Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998). According to Plaintiffs' Second Amended Complaint, the intentional infliction of emotional distress claim is based on the condemnation of the

septic system, which occurred in 2006. Plaintiffs knew or should have known, through the exercise of reasonable care and diligence, of the wrongful act and resulting injury within two years of the condemnation of the septic system and the 2006 conversation with a Green Tree representative. *See id.* Therefore, this is an instance in which the statute of limitations supports dismissal under Rule 12(b)(6) where it is evident from Plaintiffs' pleadings that the action is barred and the pleadings fail to raise some basis for applying the discovery rule, tolling, or the like. *See Jones*, 339 F.3d at 366.

Accordingly, for all of these reasons, the undersigned recommends that Plaintiffs' claim for intentional infliction of emotional distress should be dismissed with prejudice.

VII.   <u>Plaintiffs' unjust enrichment claim should be dismissed.</u>

Plaintiffs' unjust enrichment claim is based on allegations that Defendant and its predecessors accepted money from Plaintiffs even though it had not allowed Marsha Chambers to assume Patricia Verm's mortgage loan. *See* Dkt. No. 58 at 89-93.

"The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties." *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. – Texarkana 1996), *aff'd*, 466 S.W.2d 467 (Tex. 1998). "When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff." *Id.* Because a claim for unjust enrichment is "based on quasi-contract," it is

"unavailable when a valid, express contract governing the subject matter of the dispute exists." *Id.*; *see also Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) ("The written contracts in this case foreclose any claims for unjust enrichment.").

Defendant argues that Plaintiffs pleaded that they assumed Patricia Verm's mortgage loan and, consequently, Plaintiffs had a contractual relationship with Defendant. Under those facts, Plaintiffs would not be entitled to unjust enrichment.

Conversely, Plaintiffs plead that, because Defendant's predecessor did not allow Marsha Chambers to assume the loan, Plaintiffs should receive back any money tendered during the entire time they lived on the Property. Defendant argues that, under these facts, it was not unjustly enriched. Under this theory, when Marsha Chambers purchased the property from Patricia Verm, she owned the property subject to the Deed of Trust and, barring foreclosure by Defendant, had the right to possession of the Property. The right of possession would have ended if Defendant foreclosed, and Marsha Chambers voluntarily tendered payments to avoid foreclosure and received the benefit of occupying the Property, regardless of the Property's condition, which Defendant had no control over.

The undersigned concludes that Plaintiff has failed to state a claim for unjust enrichment and that, accordingly, the claim should be dismissed with prejudice.

VIII.   <u>Plaintiffs' common law fraud claim should be dismissed.</u>

Plaintiffs' common-law fraud claim is based on allegations that Defendant falsely represented that it obtained insurance for the Property from June 30, 2006

through June 30, 2007 and fraudulently added insurance premiums to the amount due under the loan. Plaintiffs state in their Second Amended Complaint that their common-law fraud claim "is only being presented to establish Greentree's pattern of intentional fraud." Dkt. No. 58 at 95.

Defendant argues that Plaintiffs' common-law fraud claim consists of mere conclusory allegations of Defendant's intent and hearsay about alleged conversations with an insurance company. *See* Dkt. No. 58 at 93-97; Dkt No. 78 at 18. Plaintiffs do not respond to Defendant's arguments in their response. *See* Dkt. Nos. 84 & 85.

Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Shandong Yinguang Chem. Indus. Jt. Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake," and Texas state law fraud claims are subject to this requirement. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where

the statements were made, and explain why the statements were fraudulent.'" *Id.* at 551 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). Plaintiffs have failed to Rule 9(b)'s heightened pleading standard because they fail to identify the speaker or state when and where the statements were made.

Additionally, Plaintiffs' common-law fraud claim is barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(4). The statute of limitations on any alleged fraud arising from the insurance policies issued in 2006 would have run in 2010. This is again an instance in which the statute of limitations supports dismissal under Rule 12(b)(6) where it is evident from Plaintiffs' pleadings that the action is barred and the pleadings fail to raise some basis for applying the discovery rule, tolling, or the like. *See Jones*, 339 F.3d at 366.

Plaintiffs also allege that Defendant violated Texas Penal Code § 34.27(a), which provides that "[a] person commits an offense if, with intent to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the verity, legibility, or availability of a writing, other than a governmental record," by destroying the written loan assumption agreement. Plaintiffs state that they do not seek criminal charges against Defendant and acknowledge that they cannot identify the person who destroyed the written loan assumption agreement. *See* Dkt. No. 58 at 93-97. To the extent that Plaintiffs seeks a remedy for Defendant's alleged violation of the Texas Penal Code, they failed to state a claim for relief. A civil action does not permit a private party to enforce criminal statutes. *See Florance v. Buchmeyer*, 500 F. Supp. 2d

618, 626 (N.D. Tex. 2007); *see also Williams v. Cintas Corp.*, No. 3:07-cv-561-M, 2007 WL 1295802, at *2 (N.D. Tex. Apr.10, 2007) ("federal courts have repeatedly held that violations of criminal statutes do not give rise to a private right of action."), *rec. adopted*, 2007 WL 1300780 (N.D. Tex. May 2, 2007). And the Texas Penal Code does not create private causes of action. *See Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App. – -San Antonio 2002, no pet.); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App. – Houston [1st Dist.] 2001, no pet.).

Accordingly, for all of these reasons, the undersigned concludes that Plaintiffs' common-law fraud claims should be dismissed with prejudice.

## Recommendation

Defendant Ditech Financial, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. No. 78] should be GRANTED in part and DENIED in part. All claims asserted by Plaintiff Jerry Chambers should be dismissed with prejudice. Plaintiff Marsha Chambers's claims for violations of the Texas Deceptive Trade Practices Act, Texas Debt Collection Practices Act, intentional infliction of emotional distress, unjust enrichment, and common law fraud should be dismissed with prejudice, and her claims for violations of Texas Business and Commerce Code § 27.01 and Texas Business and Commerce Code § 305.053 should not be dismissed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 30, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE